

14 CV 2555

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ISAIAS GONZALEZ, JORGE GARCIA
MEJIA and LORENZO MEJIA SAPON,
*individually and on behalf of others similarly*
*situated,*

                            *Plaintiffs,*

             -against-

SCHNIPPER RESTAURANTS LLC (d/b/a
SCHNIPPER'S QUALITY KITCHEN),
SRG1, LLC (d/b/a SCHNIPPER'S QUALITY
KITCHEN), JON SCHNIPPER and ANDREW
SCHNIPPER,
                           *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Isaias Gonzalez, Jorge Garcia Mejia and Lorenzo Mejia Sapon, individually

and on behalf of others similarly situated (collectively the "Plaintiffs"), by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against

Schnipper Restaurants LLC (d/b/a Schnipper's Quality Kitchen), SRG1, LLC (d/b/a Schnipper's

Quality Kitchen), Jon Schnipper and Andrew Schnipper (collectively the "Defendants") allege as

follows:

## NATURE OF THE ACTION

1.      Plaintiffs are present and former employees of Defendants Schnipper Restaurants LLC (d/b/a Schnipper's Quality Kitchen), SRG1, LLC (d/b/a Schnipper's Quality Kitchen), Jon Schnipper and Andrew Schnipper.

2.      Defendants own, operate, and/or control a fast food restaurant located at 1 Madison Avenue, New York, New York 10010 (hereinafter "23rd Street Location"), operating under the trade name "Schnipper's Quality Kitchen".

3.      Upon information and belief, individual Defendants Jon Schnipper and Andrew Schnipper, serve or served as owners, managers, principals or agents of Defendants Schnipper Restaurants LLC and SRG1, LLC (collectively, "Defendant Corporations"), and through the corporate entity, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs are former employees of Defendants.  They were primarily employed as delivery workers, but they were required to spend a considerable part of their workday performing non-tipped, non-delivery work, including various restaurant duties such as refilling the ice and juice machines, making juice and ice tea, refilling containers with dressing, taking out the garbage, washing dishes and all the cooking utensils, pots and utensils used by the kitchen staff, bringing up food for the cooks, preparing hamburger meat and side salads, carrying down and stocking deliveries in the basement, sweeping and mopping the refrigerators and the garbage rooms, bringing in and taking out the bicycles, transporting food and other items between the two restaurants, taking out and bringing in chairs and tables, cleaning used trays and windows, placing stickers on salad containers, bringing up sodas and other drinks from the basement and refilling the refrigerator, carrying large containers from the kitchen to the basement, twisting and tying down cardboard boxes and taking them out with the garbage, cleaning the basement, and

- 2 -

removing the kitchen rubber mats and cleaning the hallways and areas around the refrigerators (hereinafter "non-tipped non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage, overtime, and spread of hours compensation required by federal and state law and regulations.

9.      Defendants employed and accounted for Plaintiffs as delivery workers but in actuality their duties required greater or equal time spent performing the non-tipped non-delivery functions described above.

10.     Regardless, at all times Defendants paid Plaintiffs below the tip-credit rate. Furthermore, under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum

- 3 -

wage rate and to enable them to pay Plaintiffs below the lower tip-credited rate by designating them delivery workers instead of non-tipped employees.

12.    For at least 6 years prior to the filing of this action – the statute of limitations under the New York State Labor Law – continuing to the present, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work without providing the minimum wage compensation required by federal and state law and regulations.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

18.     Plaintiff Isaias Gonzalez ("Plaintiff Gonzalez" or "Mr. Gonzalez") is an adult individual residing in Bronx County, New York. Plaintiff Gonzalez was employed by the Defendants from approximately September 2012 until on or about March 21, 2014.

19.     During the course of his employment, Plaintiff Gonzalez worked at Defendants' 23rd Street Location.

20.     Plaintiff Jorge Garcia Mejia ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Bronx County, New York. Plaintiff Mejia was employed by the Defendants from approximately September 16, 2013 until March 21, 2014.

21.     During the course of his employment, Plaintiff Mejia worked at Defendants' 23rd Street Location.

22.     Plaintiff Lorenzo Mejia Sapon ("Plaintiff Sapon" or "Mr. Sapon") is an adult individual residing in Bronx County, New York. Plaintiff Sapon was employed by the Defendants from approximately May 2013 to December 2013.

23.     During the course of his employment, Plaintiff Sapon worked at Defendants' 23rd Street Location.

*Defendants*

24.     At all relevant times, Defendants owned, operated, and/or controlled a fast food restaurant located at 1 Madison Avenue, New York, New York 10010.

25.     Upon information and belief, Schnipper Restaurants LLC. (d/b/a Schnipper's Quality Kitchen) is a domestic corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its corporate headquarters at 620 8th Avenue, New York, New York 10018, and its process address at 171 E. 74th Street, Apt. 6, New York, New York 10021.

26.     Upon information and belief, SRG1, LLC (d/b/a Schnipper's Quality Kitchen) is a domestic corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its corporate headquarters at 115 East 87th St., Apt. 9F, New York, New York 10128, and its process address at Schnipper's Quality Kitchen, 620 8th Avenue, New York, New York 10018.

27.     Defendant Jon Schnipper is an individual engaging in business in this judicial district during the relevant time period.  Defendant Jon Schnipper is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.  He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.     Defendant Andrew Schnipper is an individual engaging in business in this judicial district during the relevant time period.  Defendant Andrew Schnipper is sued individually in his

capacity as an owner, officer and/or agent of Defendant Corporations.  He possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

29.     Defendants own, operate, and/or control a chain of fast food restaurants located at multiple locations in New York, including 620 8th Avenue, New York, New York 10018 and 1 Madison Avenue, New York, New York 10010, operating under the trade name "Schnipper's Quality Kitchen".

30.     The Individual Defendants, Jon Schnipper and Andrew Schnipper, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

31.     Defendants possess substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.     Defendants employ Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

- 7 -

33.    Upon information and belief, Individual Defendants Jon Schnipper and Andrew Schnipper operate Defendant Corporations as either alter egos of themselves, and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things,

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations,

    b.  defectively forming or maintaining Defendant Corporations by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.  transferring assets and debts freely as between all Defendants,

    d.  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e.  operating Defendant Corporations for their own benefit and maintaining control over these entities as  closed corporations,

    f.  intermingling assets and debts of their own with Defendant Corporations,

    g.  diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

    h.  other actions evincing a failure to adhere to the corporate form.

34.    At all relevant times, Defendants were Plaintiffs' employer within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

- 8 -

35.     In each year from 2007 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

36.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

### Individual Plaintiffs

37.     The Plaintiffs are former employees of the Defendants ostensibly employed as delivery workers. However, Plaintiffs were also required to perform the non-delivery non-tip duties described above.

38.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Isaias Gonzalez

39.     Plaintiff Gonzalez was employed by the Defendants from approximately September 2012 until on or about March 21, 2014.

40.     Defendants ostensibly employed Plaintiff Gonzalez as a delivery worker. However, Plaintiff Gonzalez also was required to perform the non-delivery non-tip duties described above.

41.     Although Plaintiff Gonzalez ostensibly was employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work.

42.     Plaintiff Gonzalez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

43.    Plaintiff Gonzalez' work duties required neither discretion nor independent judgment.

44.    From approximately September 2012 until December 2013, Plaintiff Gonzalez worked from 5:00 p.m. to 11:30 p.m. Mondays through Fridays and from 12:00 p.m. to 11:00 p.m. on Sundays (typically 43.5 hours per week).

45.    From approximately December 2013 until March 21, 2014, Plaintiff Gonzalez worked from approximately 6:00 p.m. until on or about 11:30 p.m., Mondays through Fridays and from 12:00 p.m. to 11:00 p.m. on Sundays (typically 38.5 hours per week).

46.    Throughout his employment with the Defendants, Plaintiff Gonzalez was paid his wages by check.

47.    From approximately September 2012 until on or about December 2013, Plaintiff Gonzalez was paid $5 per hour; however, Defendants did not pay Plaintiff Gonzalez for all the hours he worked.

48.    From approximately December 2013 until March 21, 2014, Plaintiff Gonzalez was paid $5.65 per hour; However, defendants did not pay Plaintiff Gonzalez for all the hours he worked.

49.    Plaintiff Gonzalez' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

50.    In fact, Defendants required Plaintiff Gonzalez to punch out at 10:00 p.m. and continue working until 11:30 p.m.

51.    Plaintiff Gonzalez never was notified by the Defendants that his tips would be included as an offset for wages.

- 10 -

52.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gonzalez' wages.

53.     In addition, Defendants withheld 30% of all the tips clients paid Plaintiff Gonzalez (including cash tips, which they deducted from the credit card tips).

54.     Although Plaintiff Gonzalez was required to keep track of his time, the defendant required him to sign-out at 10:00 p.m. and continue working until 11:30 p.m every night.

55.     Furthermore, Defendants did not provide Plaintiff Gonzalez with a statement of wages with each payment of wages, as required by NYLL 195(3).

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalez regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not give any notice to Plaintiff Gonzalez, in English and in Spanish (Plaintiff Gonzalez' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

58.     Defendants required Plaintiff Gonzalez to purchase "tools of the trade" with his own funds—including a bicycle for $400, a helmet for $30, two polo shirts for $20 each, a hat for $20 and a chain and lock set for $80. Thus, the total cost of the "tools of the trade" Plaintiff Gonzalez was required to purchase as a deliveryman was approximately $570.00.

*Plaintiff Jorge Garcia Mejia*

59.     Plaintiff Mejia was employed by the Defendants from approximately September 16, 2013 until March 21, 2014.

60.     Defendants ostensibly employ Plaintiff Mejia as a delivery worker. However, Plaintiff Mejia also was required to perform the non-delivery non-tip duties described above.

- 11 -

61.     Although Plaintiff Mejia ostensibly was employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work throughout his employment with Defendants.

62.     Plaintiff Mejia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

63.     Plaintiff Mejia's work duties required neither discretion nor independent judgment.

64.     Throughout his employment with Defendants, Plaintiff Mejia regularly worked in excess of 40 hours per week.

65.     From approximately September 16, 2013 until on or about December 2013, Plaintiff Mejia worked from approximately 4:00 p.m. until on or about 11:30 p.m. Mondays, Wednesdays, Thursdays and Fridays, from approximately 3:00 p.m. until on or about 11:30 p.m. on Saturdays and from 12:00 p.m. until on or about 11:00 p.m. on Sundays (tipically 49.5 hours per week).

66.     From approximately December 2013 until on or about March 21, 2014, Plaintiff Mejia worked from 5:00 p.m. until 11:30 p.m., Mondays, Wednesdays, Thursdays and Fridays, from 3:00 p.m. to 11:30 p.m. on Saturdays, and from 12:00 p.m. to 11:00 p.m. on Sundays (typically 45.5 hours per week).

67.     Throughout his employment with the Defendants, Plaintiff Mejia was paid his wages by check.

68.     From approximately September 2013 until on or about November 2013, Defendants paid Plaintiff Mejia $50 per week.

69.     From approximately November 2013 until on or about December 2013, Plaintiff Mejia was paid $5 per hour; however, he was not paid for all the hours he worked.

70.     From approximately December 2013 until March 2014, Plaintiff Mejia was paid $5.65 per hour; however, he was not paid for all the hours he worked.

71.     Plaintiff Mejia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

72.     In fact, Defendants required Plaintiff Mejia to punch out at 10:00 p.m. and continue working until 11:30 p.m.

73.     Plaintiff Mejia never was notified by Defendants that his tips were being included as an offset for wages.

74.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

75.     In addition, Defendants withheld 30% of all the tips clients paid Plaintiff Mejia (including cash tips, which they deducted from the credit card tips .

76.     Although Plaintiff Mejia was required to keep track of his time, the defendant required him to sign-out at 10:00 p.m. and continue working until 11:30 p.m every night.

77.     Defendants did not provide Plaintiff Mejia with each payment of wages a statement of wages, as required by NYLL 195(3).

78.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

79.     Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

80. Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including a bicycle for $250 and a chain and lock set for $50. Thus, the total cost of the "tools of the trade" Plaintiff Mejia was required to purchase as a deliveryman was approximately $300.00.

*Plaintiff Lorenzo Mejia Sapon*

81. Plaintiff Sapon was employed by the Defendants from approximately May 2013 until on or about December 2013.

82. Defendants ostensibly employed Plaintiff Sapon as a delivery worker. However, Plaintiff Sapon was also required to perform the non-delivery, non-tip duties described above.

83. Although Plaintiff Sapon was ostensibly employed as a delivery worker, he spent over 20 percent of his daily hours performing non-delivery work throughout his employment with Defendants.

84. Plaintiff Sapon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

85. Plaintiff Sapon's work duties required neither discretion nor independent judgment.

86. Throughout his employment with Defendants, Plaintiff Sapon regularly worked in excess of 40 hours per week.

87. From approximately May 2013 until on or about August 2013, Plaintiff Sapon worked from approximately 5:00 p.m. until on or about 11:30 p.m., Sundays through Fridays (typically 39 hours per week).

88.     From approximately July 2013 until on or about December 2013, Plaintiff Sapon worked from 5:00 p.m. until on or about 11:30 p.m. Mondays through Fridays and from 11:00 A.M. to 11:00 P.M. on Sundays (typically 43.5 hours per week).

89.     Throughout his employment with the Defendants, Plaintiff Sapon was paid his wages by check.

90.     Plaintiff Sapon was paid $5 per hour throughout his employment with defendants; however, he was not paid for all the hours he worked.

91.     Plaintiff Sapon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

92.     In fact, Defendants required Plaintiff Sapon to punch out at 10:00 p.m. and continue working until 11:30 p.m.

93.     Plaintiff Sapon was never notified by Defendants that his tips were being included as an offset for wages.

94.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sapon's wages.

95.     In addition, Defendants withheld 30% of all the tips clients paid Plaintiff Sapon (including cash tips, which they deducted from the credit card tips .

96.     Although Plaintiff Sapon was required to keep track of his time, the defendant required him to sign-out at 10:00 p.m. and continue working until 11:30 p.m every night.

97.     Defendants did not provide Plaintiff Sapon with a statement of wages with each payment of wages, as required by NYLL 195(3).

98.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sapon regarding overtime and wages under the FLSA and NYLL.

99. Defendants did not give any notice to Plaintiff Sapon in English and in Spanish (Plaintiff Sapon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

100. Defendants required Plaintiff Sapon to purchase "tools of the trade" with his own funds—including a bicycle for $300, a helmet for $50, a chain for $40, a lock for $35,  5 polo shirts for $20 each and a hat for $20. Thus, the total cost of the "tools of the trade" Plaintiff Sapon was required to purchase as a deliveryman was approximately $545.

*Defendants' General Employment Practices*

101. Defendants regularly required Plaintiffs to work without paying them the proper minimum and overtime wages.

102. Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work without paying them appropriate minimum wage and overtime, as required by federal and state laws.

103. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

104. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

105. Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

106.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

107.    At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

108.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

109.    Defendants required Plaintiffs to perform the jobs of multiple employees in addition to their primary responsibilities as delivery workers.  These responsibilities included the non-delivery, non-tip duties described above.

110.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent in the non-tipped functions described above.

111.    These Plaintiffs were paid at the lowered tip-credited rate by Defendants; however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

112.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

- 17 -

113.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including the non-delivery, non-tip duties described above .

114.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

115.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

116.    Defendants failed to post required wage and hour posters in the restaurant/shop, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' lack of sophistication in wage and hour laws.

117.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

118.    Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

119.    Defendants employed several Plaintiffs as delivery workers and required them to provide their own locks, chains and bicycles, and refused to compensate them or reimburse them for these expenses.

120.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

121.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

122.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

123.   At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at the proper wage rate and willfully failing to keep records required by the FLSA.

124.   The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

125.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

127.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

128.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

129.   Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

130.   Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

131.   Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

133.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

135.    Defendants' failure to pay Plaintiffs and the FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

136.    Plaintiffs and the FLSA class members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

139.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

140.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

141.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK LABOR LAW)

145.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

146.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

147.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

148.    Plaintiffs been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

149.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 142-2.4(a).

151.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

152.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    Defendants failed to provide Plaintiffs with a written notice, in English and in

Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

155.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorneys fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

156.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

157.    Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

158.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorneys fees.

## EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

159.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

160.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

161.    Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

- 24 -

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that the Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages

- 25 -

pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorney's fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 10, 2014

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _____
        Michael Faillace [MF-8436]

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone:     (212) 317-1200
Facsimile:     (212) 317-1620
*Attorneys for Plaintiff*

- 26 -